### STONE v. STERLING MUT. LIFE INS. CO.
#### No. 10727.

Court of Civil Appeals of Texas. Galveston.
March 23, 1939.

Rehearing Denied April 27, 1939.

**346**

Irving G. Mulitz and Guynes & Colgin, all of Houston, for appellant.

Vinson, Elkins, Weems & Francis and Frank G. Dyer, all of Houston, for appellee.

GRAVES, Justice.

This general statement has been taken from the appellant's brief:

"Appellant sued appellee for the sum of $37,500.00, alleging same to be due him, as commissions, under and by virtue of a written agreement dated April 1, 1931, between the appellee and one W. L. Pearson, whereby appellee agreed to pay Pearson for a period of five years 5 per cent of the renewal-premiums on certain policies of insurance of Peerless Mutual Life Insurance Company—in consideration for the agreement of Pearson to use his influence to secure the cooperation of the last board of directors of Peerless Mutual Life Insurance Company and to use his best efforts to keep in force the insurance of Peerless Mutual Life Insurance Company—which had been taken over by purchase by the appellee. Appellant further alleged the full performance of such contract on the part of Pear-

son. Pearson had assigned and transferred his contract with appellee to appellant, and had agreed to and did fulfill the requirements made of him.

"The contract between W. L. Pearson and appellee was as follows:

"'April 1, 1931.

"'In consideration of your agreement to use your best efforts to keep in force the insurance of Peerless Mutual Life Insurance Company, recently taken over by us and to cooperate with us in every way to this end; using your influence to secure and maintain the full and whole-hearted cooperation of the members of the last Board of Directors of said Company, we agree to pay you, for a period of five years from January 1, 1931, five per cent of the renewal-premiums of those Peerless policies assumed by us where we are not now, or may hereafter become liable for the payment of renewal commissions to other agents that were in the service of Peerless. Said five per cent renewal commissions will be paid to you at our offices at Houston, Texas, as, when and if paid in cash to us by said policy holders.

"'We will furnish you written statements of said commission account at the expiration of each ninety days, the first statement being furnished you as of March 31, 1931. You agree to accept as a true and correct such statement when verified by an officer of the company.

"'Yours very truly
"'Sterling Mutual Life Insurance Company
"'By A. M. Miller.

"'Accepted:
"'W. L. Pearson'

"Appellant, in an alternative count, sought to recover judgment against the appellee on the ground that W. L. Pearson paid a note for $7,000.00 which he (Pearson) had endorsed for Peerless Mutual Life Insurance Company, and which the appellee-company, through its president, Miller, persuaded Pearson to pay through representations that the appellee would make a contract with him, Pearson, whereby he would recover back the $7,000.00 he paid for the Peerless Mutual Life Insurance Company.

"Appellee filed a general demurrer, special exceptions, and a plea in bar.

"The trial court sustained the general demurrer, which was presented by the appellee, and dismissed the suit, to all of

which appellant duly excepted and gave notice of appeal to this Court."

Appellant's main contentions here—in inveighing against the adverse judgment below—are to the effect that this declared upon cause-of-action was not one involving the sale of insurance, but one involving an indemnity-agreement, which was executed to Pearson by the appellee; that Pearson was not an agent within the meaning of R.S.Art. 5055, hence that statute did not apply; and, in any event, assuming that Pearson was an agent within the terms of that Article, he should not be denied relief—at least upon his alternative count for reimbursement to himself for the $7,000 he paid out on the note of the Peerless Company to the bank—because he and the appellee were not in pari delicto, as to that phase of the controversy.

Neither of these answering positions, it is thought, is sound; in the first place, the appellant's petition shows on its face that the action was one to recover $37,500 in commissions, alleged to have been earned by Pearson pursuant to the quoted-contract with the appellee, which was an insurance-corporation subject to the Texas Statutes, by the terms of which it agreed to pay him five per cent. of all renewal-premiums collected on the Peerless Mutual Life Insurance Company policies, which had been taken over by the appellee; that this was in consideration of Pearson's agreement to use his best efforts both to keep in force such taken-over insurance and to exert his influence with the Board of Directors of the Peerless Company to that same end;

It further shows that Pearson, while working under the contract, had not complied with R.S.Art. 5055, which makes it unlawful for anyone to act within the State of Texas as agent, or otherwise, in soliciting or receiving applications for insurance of any kind whatsoever, or in any manner to aid in the transaction of business of any Insurance Company incorporated in Texas, or out of this State, without first procuring a certificate of authority from the Commissioner of Insurance of this State, in that he was never so empowered to act for the appellee.

It thus appears from the very face of the petition itself that each and every act of Pearson—performed under the declared-upon contract in earning such commissions —was denounced by that act as illegal and void; therefore it seems plain that the learned trial court did not err in sustaining the Insurance Company's general demurrer to the petition so showing.

■ Further claims that only solicitation by agents of new insurance came within the purview of the cited statute, and that its terms do not expressly render void such acts or contracts by the agent as the ones herein involved, are likewise inept; because the statute does specifically denounce as unlawful the acts of any person, whether an agent or not, who "in any manner aids in the transaction of the business of any insurance company incorporated in this state, or out of it, without first procuring a certificate of authority from the Commissioner"; this, under our authorities, amounts to an explicit pronouncement that such acts are void;

■ Therefore, the contract itself and everything done under it were outlawed; American Construction Co. v. Kraft, Tex. Civ.App., 264 S.W. 636; Article 5055, R. C.S. of Texas; Article 571, Penal Code of Texas; Employers' Casualty Co. v. Mitchell, Tex.Civ.App., 84 S.W.2d 862; Kenedy v. Schultz, 6 Tex.Civ.App. 461, 25 S.W. 667; Republic Reciprocal Ins. Ass'n v. Colgin Hospital & Clinic, 123 Tex. 31, 65 S.W.2d 286; San Jacinto Life Ins. Co. v. Brooks, Tex.Civ.App., 274 S.W. 648; 10 Tex.Jur. 242; Wilson v. Vick, 93 Tex. 88, 53 S.W. 576.

■ The contract being thus illegal in its entirety, the petition stated no cause of action in its alternative count for the $7,-000, alleged by appellant to have been paid by Pearson for it. Under this principle of law, as declared in 10 Texas Jurisprudence, at page 242: "Where an illegal contract has been fully executed, the courts will not interfere to litigate the claims of parties in pari delicto who have been injured thereby; neither a court of law nor a court of equity will aid either party to recover or reinvest himself with any title or interest vested in the other, but will leave them in the same position as to vested interests as they, by their own acts, have placed themselves. So money paid under an illegal contract may not be recovered back, where the contract has been fully executed and the parties are in pari delicto."

■ Moreover, since the petition nowhere alleged that the appellee had anything to do with Pearson's failure to procure such certificate, not even declaring that he had ever requested the appellee to assist him in procuring one, it cannot be

fairly said that the parties in bringing about this result were not in pari delicto; especially so, in view of its other averments to the effect that Pearson (himself an insurance man and President of the Peerless Company) was given this forbidden contract as the sole consideration for his extra undertaking to pay the $7,000 note he was already liable on as endorser.

Upon the whole, it seems clear that the appealed-from judgment has not been successfully attacked; it will therefore be affirmed.

Affirmed.