265 S.W.2d 584 (1954)
M. M. M., Inc.
v.
MITCHELL.
No. A-4403.
Supreme Court of Texas.
March 3, 1954.
Rehearing Denied March 31, 1954.
Vinson, Elkins, Weems & Searls and B. Jeff Crane, Jr., Houston, for petitioner.
Gavin Ulmer and J. H. Burr, Houston, for respondent.
GARWOOD, Justice.
The primary question in this proceeding is whether an engineer, who has been issued an original certificate under Section 15 of the statute regulating the practice of professional engineering, Art. 3271a, Vernon's Tex.Civ.Stats.Ann., is yet illegally practicing when he contracts to and does render engineering services during a year for which he has failed to pay his annual certificate renewal fee as required by Section 16 of the same law. Both mentioned sections are copied in the footnote.[1] The suit *585 is one by the respondent, A. J. Mitchell, for the $5,250 balance of a sum which our petitioner, M. M. M. Incorporated (defendant below), agreed in writing to pay him for the services in question. Since we determine the primary issue adversely to the respondent-plaintiff, we need not decide the subsidiary question of whether he is entitled to recover attorney's fees under Art. 2226, Vernon's Ann.Tex.Civ.Stats.
At the close of the evidence both sides moved for an instructed verdict, which was granted to the respondent-plaintiff in respect of his claim for services but to the petitioner-defendant in respect of its alleged liability for attorney's fees. Both parties appealed upon an agreed "statement of the case and of the facts proven" therein, Rule 378, Tex.R.Civ.Proc., and the Court of Civil Appeals (on rehearing) affirmed the trial court judgment after reforming it so as also to allow the respondent-plaintiff his attorney's fees. Tex.Civ.App., 261 S.W. 2d 472.
The agreed statement above mentioned establishes that: (a) the services of respondent-plaintiff as contracted for and rendered "constituted the `practice of professional engineering' within the meaning of that term as defined in Section 2 of * * * Article 3271a * * *"; (b) the respondent-plaintiff "was duly registered as a professional engineer by the State Board of Registration for Professional Engineers on June 10, 1938, under and in accordance with the provisions of Article 3271a, V.A.C.S., and on August 18, 1938, said Board issued to the plaintiff a certificate of registration in conformity with the provisions of said article"; (c) neither said registration nor certificate has ever been "revoked under the provisions of said Article 3271a"; (d) the contract sued on was made "in the month of July 1949" and the services in question duly performed thereafter prior to an unspecified day in November 1949 when payment was demanded and, of course, prior to the filing of the suit, which occurred on April 6, 1951; (e) the respondent-plaintiff during the period from January 1, 1948 through December 31, 1949 failed to "pay the fee of Five ($5.00) dollars or any other fee provided for in Section 16" above mentioned.
The stipulation thus omits reference to when, if ever, the renewal fee was paid either before or after the calendar years 1948 and 1949. It likewise fails to state whether the notice required in Section 16 was sent to the respondent-plaintiff, although this subject is not stressed in the briefs.
It was further stipulated that the judgment of the trial court for the $5,250 balance in question should be affirmed, or reversed and rendered against the respondent-plaintiff accordingly as the payment by the latter of the annual fee above mentioned "for the renewal of his certificate for the year 1949 was and is" (or was and is not) "a condition precedent to the Defendant's liability * * *."
The question as last above presented is for our purposes the same as whether the respondent-plaintiff could lawfully practice his profession under the circumstances, because, if he could not, he is, and seems admittedly to be, barred from recovery under decisions such as Kadane v. Clark, 135 Tex. 496, 143 S.W.2d 197, dealing with the Securities Act. ("While the law does not specifically provide that a contract made in violation of this Act shall be void, * * *. Any other construction would nullify the very purpose for which it was enacted." 143 S.W.2d 197, 200.) Since the declared purpose of Art. 3271a, supra, § 1, "to safeguard life, health and property" from dangers arising from the "unlawful" practice of engineering, is obviously more *586 important than the fraud prevention purposes of the Securities Act, and since the penalties, Section 23, are certainly no less severe, we easily conclude that a contract for engineering services to be rendered by one prohibited under Art. 3271a from rendering them is unenforceable.
The critical question of the effect of default in payment of the annual fee requires at least an abbreviated review of the entire act in question, which was passed in 1937, was the first such regulation of general engineering and has not been amended.
Section 1 in general terms forbids the practice of engineering unless the practitioner shall have previously proved his qualifications and been "registered as hereinafter provided". Section 2 defines professional engineers and engineering.
Sections 3 through 11 provide for the body to administer the Act ("State Board of Registration for Professional Engineers") with numerous details as to its organization, duties and operation. From these provisions, especially Section 9, which includes establishing the "Professional Engineers' Fund", it is quite plain that the continued operation of the Board depends upon its receiving the "moneys derived under the provisions of this Act," none of which consist of appropriations from the State. Section 11 requires the Board to prepare an annual "roster showing the names and places of business of all registered professional engineers" and to mail a copy thereof "to each person so registered".
Section 12 deals with qualifications "for registration as a professional engineer"; Section 13 with "applications for registration" and the corresponding "registration fee" (maximum $25); and Section 14 with examinations to determine "the qualifications of applicants for registration".
Sections 15 and 16 have been heretofore quoted in footnote 1. In connection with the private seal required in the second paragraph of Section 15 to be obtained by each engineer "upon registration," there is the further requirement that it shall be affixed to documents issued by a registrant if the latter are filed with public authorities "during the life of the registrant's certificate" and a provision that use of said seal while the certificate stands expired or revoked "shall be unlawful".
Section 17 permits the practice of professional engineering by partnerships, corporations, and joint stock associations through individual engineers "registered in this State." Section 18 provides that, during the year following the effective date of the Act, and under certain conditions, "the Board shall issue a certificate of registration, without oral or written examination, to any professional engineer" then practicing in the state.
Section 19 requires for certain public works that "a registered professional engineer" prepare the plans, specifications and estimates and supervise the construction, this evidently being one of the instances contemplated by Section 15 for use of an engineering seal "during the life of the registrant's certificate".
Section 20 exempts certain persons and activities from the operation of the Act and section 21 permits the Board, under certain conditions, to "issue a certificate of registration" to persons holding certificates from sources other than this state.
Section 22, among other provisions, empowers the Board to hold hearings and "revoke the certificate of registration of any registrant" for fraud in its procurement or for malpractice and to "re-issue a certificate of registration to any person whose certificate has been revoked" as well as to issue "a new certificate" in lieu of "any certificate revoked, lost, destroyed or mutilated".
Section 23 provides severe fines and imprisonment for "any person who shall practice * * * engineering * * * without being registered * * * in accordance with * * * this Act * * * or any person presenting or attempting to use as his own the certificate * * * or the seal of another * * * or any person who shall violate any of the provisions of this Act".
*587 It cannot be denied that, under the foregoing provisions, the original licensing of an engineer is one thing and the annual certificate renewal quite another. For all the statute provides, an engineer, once licensed, may fail to pay his renewal fee for twenty years and yet renew his certificate thereafter and be undoubtedly authorized to practice upon payment of a renewal fee apparently limited to $10, Section 16. Nor, with exception of the right to use a seal, Section 15, is there any perfectly clear provision that practice by one whose certificate has lapsed (or, for that matter, been revoked) is unlawful. The original licensing is spoken of in terms of "registration"; the letter of the condition for lawful practice is that the practitioner be "duly registered", Section 1; the letter of the penalty section, 23, is "who shall practice * * * without being registered". The last sentence of the first paragraph of Section 15 says that "the issuance of a certificate of registration * * * shall be evidence that" the holder "is entitled to all rights and privileges of a registered professional engineer, while the said certificate remains unrevoked or unexpired." (Italics supplied.)
On the other hand, in Section 22 the certificate itself is identified with the right to practice; and despite the use of the bare words "without being registered" in the penalty section, 23, it will hardly be disputed that practice by one whose certificate has been revoked for "gross negligence, incompetency, or misconduct in the practice" would be unlawful, because the whole purpose of the statute is "to safeguard life, health, and property" from these very hazards. "Registered" in Section 23 thus means something different from "once registered." Section 15 contains not only the abovequoted sentence with the word "evidence," but also the provision that, "In case of a registered engineer, the certificate shall authorize the practice of professional engineering." This provision does not by its terms refer only to the original certificate, and certainly in the normal course of things an "expired" certificate is no certificate at all. In the "evidence" sentence, moreover, a revoked and lapsed certificate are treated as if the same, and yet obviously revocation deprives the holder of the right to practice as distinguished from mere evidence of that right.
There is thus substantial ground in the letter of the statute on which to rest the conclusion we have reached. There is even more ground in the general purpose or spirit. The object of the renewal obligation is both to supply an obviously important part of the revenues on which the whole operation of the law depends and to keep an up to date record of practicing engineers. Unless there is some substantial penalty to compel compliance, the burden of supporting the Board falls entirely on those who comply while the others get the benefits of the law but evade its obligations. The penalty of not being able to use the seal is, indeed, provided; yet the inference, that this is the only penalty, applies equally to the matter of practice after the certificate has been revoked, and, as before indicated, the right to even limited practice by one whose certificate is revoked, cannot have been intended; nor is it a likely intent of the legislature to allow one, who permits his certificate to expire, to practice generally, while not allowing him to use a seal. The peculiar wording of the statute makes a conclusion either way not free from doubt, and in such cases a claim for services rendered is normally most appealing. But a construction that favors better enforcement of an act for the protection of life and health at an occasional loss to those, who somehow fail to carry its almost insignificant burdens for maintaining their high profession, also has its equitable appeal.
The decision in Stokes v. Sundermeyer, Tex.Civ.App., 170 S.W.2d 583, wr. of er. refused, does not conflict with our holding. There are important factual differences in the two cases, and the delinquency notice provision in the applicable Supreme Court rules governing dues in the State Bar has no parallel in Section 16 or other part of Art. 3271a. Nor do we believe that under the stipulation in the instant case we can assume that the State Board failed to do its statutory duty of notifying the respondent-plaintiff "of the date of expiration of his *588 certificate and the amount of the fee * * * required for its renewal for one (1) year," such notice to be mailed "at least one (1) month in advance of the date of the expiration * * *."
The judgment of the Court of Civil Appeals is reversed. The judgment of the trial court is reformed so as to deny recovery to the respondent-plaintiff on his claim for services and as so modified it is affirmed. The costs are equally divided between the parties.
NOTES
[1] Sec. 15. "Certificates, seals.The Board shall issue a certificate of registration upon payment of registration fee as provided for in this Act, to any applicant, who, in the opinion of the Board, has satisfactorily met all the requirements of this Act. In case of a registered engineer, the certificate shall authorize the practice of professional engineering. Certificates of registration shall show the full name of the registrant, shall have a serial number, and shall be signed by the Chairman and the Secretary of the Board under seal of the Board. The issuance of a certificate of registration by this Board shall be evidence that the person named therein is entitled to all rights and privileges of a registered professional engineer, while the said certificate remains unrevoked or unexpired.

"Each registrant hereunder shall upon registration obtain a seal of the design authorized by the Board, bearing the registrant's name and the legend `Registered Professional Engineer'. Plans, specifications, plats, and reports issued by a registrant shall be stamped with the said seal when filed with public authorities, during the life of the registrant's certificate, but it shall be unlawful for any one to stamp or seal any documents with said seal after the certificate of the registrant named thereon has expired or has been revoked, unless said certificate shall have been renewed or reissued."
Sec. 16. "Expirations and renewals. Certificates of registration shall expire on the last day of the month of December following their issuance or renewal. It shall be the duty of the Secretary of the Board to notify every person registered under this Act of the date of expiration of his certificate and the amount of the fee that shall be required for its renewal for one (1) year; such notice shall be mailed at least one (1) month in advance of the date of the expiration of said certificate. Renewal may be effected at any time during the month of December by the payment of a fee of Five ($5.00) Dollars. The failure on the part of any registrant to renew his certificate annually in the month of December as required above shall not deprive such person of the right of renewal, but the fee to be paid for the renewal of a certificate after the month of December shall be increased ten (10%) per cent for each month or fraction of a month that renewal payment is delayed; provided, however, that the maximum fee for delayed renewal shall not exceed twice the normal renewal fee."